

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Moshe Friedman
_____

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

Columbia University
_____

David Brenner, John Doe, Lisa Hogarty, Lucinda Durning, et. al.
_____

_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. Typically, the company or organization named in your charge to the Equal Employment Opportunity Commission should be named as a defendant. Addresses should not be included here.)*

# 12 CV 9275

**RECEIVED DEC 19 2012 PRO SE OFFICE**

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

Jury Trial: ☒ Yes ☐ No
*(check one)*

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

 Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
**NOTE:** *In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

 Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634.
**NOTE:** *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.*

_____ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117.
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

 New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic chacteristics, marital status).

 New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status).

Rev. 05/2010                                     1

I. **Parties in this complaint:**

A.  List your name, address and telephone number. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff  
Name  Moshe Friedman  
Street Address  58 Laurel Ave / P.O.B. 302  
County, City  Sullivan County, South Fallsburg  
State & Zip Code  NY, 12779  
Telephone Number  845-434-1080  

B.  List all defendants' names and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant  
Name  Columbia University (Office of General Counsel)  
Street Address  535 West 116th Street  
County, City  New York  
State & Zip Code  NY 10027  
Telephone Number  212-845-5669  

C.  The address at which I sought employment or was employed by the defendant(s) is:

Employer  Columbia University Medical Center  
Street Address  650 West 168th Street  
County, City  New York  
State & Zip Code  NY 10032  
Telephone Number  212-851-0662  

II. **Statement of Claim:**

State as briefly as possible the <u>facts</u> of your case, including relevant dates and events. Describe how you were discriminated against. If you are pursuing claims under other federal or state statutes, you should include facts to support those claims. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

_____  Failure to hire me.

__X__  Termination of my employment.

_____  Failure to promote me.

_____  Failure to accommodate my disability.

_____  Unequal terms and conditions of my employment.

|   |   |   |
|---|---|---|
| X | | Retaliation. |
| X | | Other acts *(specify)*: Confiscation of my property, including private computer data . |

*Note:* Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.

B.  It is my best recollection that the alleged discriminatory acts occurred on: Starting from 1/7/2010 .
     *Date(s)*

C.  I believe that defendant(s) *(check one)*:

   X   is still committing these acts against me.

   ___ is not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

   ☐ race _____        ☐ color _____

   ☒ gender/sex  Male           ☒ religion  Jewish

   ☐ national origin _____

   ☒ age.  My date of birth is  07/12/1952  *(Give your date of birth only if you are asserting a claim of age discrimination.)*

   ☐ disability or perceived disability, _____ *(specify)*

E.  The facts of my case are as follow *(attach additional sheets as necessary)*:

In January 2010 the Columbia University Medical Center Radiation Safety Office, where I had been employed for many years, underwent a reorganization with three accompanying layoffs. This was carried out in violation Human Rights Laws and Regulatory Agency Regulations, in violation of Columbia University's own internal Policies and Procedures, and Commitments to Regulatory Agencies. The only employees adversely and illegally affected and laid off were myself and two others. All of us are clearly identified as older Orthodox, Chassidic Jews with beards and yarmulkes. The reasons given by Columbia for the layoffs are false and misleading. My termination and the other terminations was clearly for illicit discriminatory reasons. See attached.

*Note:* As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.

III.   **Exhaustion of Federal Administrative Remedies:**

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on:  September 13, 2012  *(Date)*.

*Rev. 05/2010*                                  3

B.  The Equal Employment Opportunity Commission *(check one)*:

____    has not issued a Notice of Right to Sue letter.
__X__   issued a Notice of Right to Sue letter, which I received on **Sept. 20, 2012** *(Date)*.

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.  Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

__X__   60 days or more have elapsed.
____    less than 60 days have elapsed.

## IV.  Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: _____

Compensation for loss of wages and for emotional pain and suffering, punitive damages, return of my personal possessions including computer data or full compensation, attorney fees, letter of apology and reinstatement.

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _18_ day of _December_, 20_12_.

Signature of Plaintiff    *[signature]*
Address                   ~~58 Laurel Ave~~ P.O.B 302
                          South Fallsburg, NY 12779

Telephone Number          845-434-1080
Fax Number *(if you have one)* _____

*Rev. 05/2010*                    4

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Moshe Friedman<br>P.O. Box 302<br>South Fallsburg, NY 12779 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2012-03596 | **John B. Douglass,**<br>**Supervisory Investigator** | (212) 336-3665 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[X]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*/s/ Kevin J. Berry/*     SEP 20 2012

Kevin J. Berry,<br>District Director     *(Date Mailed)*

Enclosures(s)

cc:   Donna Fenn<br>Associate General Counsel<br>COLUMBIA UNIVERSITY<br>412 Low Memorial Library<br>Mail Code: 4308<br>New York, NY 10027

520-2012-03596

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**INTAKE QUESTIONNAIRE**

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**
Last Name: Friedman   First Name: Moshe   MI: Y
Street or Mailing Address: P.O. Box 302   Apt or Unit #: ____
City: South Fallsburg   County: Sullivan   State: NY   Zip: 12779
Phone Numbers: Home: (845) 434-1080   Work: (___) ____
Cell: (___) ____   Email Address: MOSHE419@gmail.com
Date of Birth: 7/12/52   Sex: ☒ Male ☐ Female   Do You Have a Disability? ☐ Yes ☒ No
Please answer each of the next three questions.   i. Are you Hispanic or Latino? ☐ Yes ☒ No
ii. What is your Race?   Please choose all that apply. ☐ American Indian or Alaskan Native ☐ Asian ☐ White
☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander
iii. What is your National Origin (country of origin or ancestry)? Jewish

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**
Name: ____   Relationship: ____
Address: ____   City: ____   State: ____   Zip Code: ____
Home Phone: (___) ____   Other Phone: (___) ____

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)
☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) ____

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here__ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**
Organization Name: Columbia University
Address: 650 West 168th St.   County: New York
City: New York   State: NY   Zip: 10032   Phone: (___) ____
Type of Business: Medical Center   Job Location if different from Org. Address: ____
Human Resources ~~Director or Owner~~ Name: Vice Pres., Lou Bellardine   Phone: (212) 851-0623
Number of Employees in the Organization at All Locations: Please Check (✓) One
☐ Fewer Than 15   ☐ 15 – 100   ☐ 101 – 200   ☐ 201 – 500   ☒ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☒ No
Date Hired: 1997   Job Title At Hire: Senior Secretary
Pay Rate When Hired: about $20/hr   Last or Current Pay Rate: about $60,000/year
Job Title at Time of Alleged Discrimination: Office Administrator   Date Quit/Discharged: Feb 1, 2010
Name and Title of Immediate Supervisor: Salmen Loksen, Director, Radiation Safety Office

1


If Job Applicant, Date You Applied for Job __N/a__ Job Title Applied For _____

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☒ Race ☒ Sex ☒ Age ☐ Disability ☒ National Origin ☒ Religion ☐ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing  ii. family medical history  iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: __Jewish, Orthodox Chasidic Religous Practice__

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain): _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: _____ Action: __See Attached Document__

Name and Title of Person(s) Responsible: _____

B. Date: _____ Action: _____

Name and Title of Person(s) Responsible _____

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

__See Attached Document__

**7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?**

__See Attached Document__

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, sex, age, national origin, religion or disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. See Attached Document | | | |
| B. | | | |

2

Of the persons in the same or similar situation as you, who was treated *worse* than you?
    Full Name    Race, sex, age, national origin, religion or disability    Job Title    Description of Treatment

A. See Attached.

B. _____

Of the persons in the same or similar situation as you, who was treated the *same* as you?
    Full Name    Race, sex, age, national origin, religion or disability    Job Title    Description of Treatment

A. See Attached.

B. _____

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

N/A

9. **Please check all that apply:**
    ☐ Yes, I have a disability
    ☐ I do not have a disability now but I did have one
    ☐ No disability but the organization treats me as if I am disabled

10. **What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

_____

11. **Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**
    ☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

_____

12. **Did you ask your employer for any changes or assistance to do your job because of your disability?**
    ☐ Yes ☐ No
If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____
Who did you ask? (Provide full name and job title of person)

Describe the changes or assistance that you asked for: _____

How did your employer respond to your request? _____

3

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

|      | Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |

A. _See Attached._

B. _____

14. Have you filed a charge previously on this matter with the EEOC or another agency? ☐ Yes ☐ No

15. If you filed a complaint with another agency, provide the name of agency and the date of filing: _____
_New York State Division of Human Rights 1/7/11 or 1/11/11_
_They did not investigate my complaint_

16. Have you sought help about this situation from a union, an attorney, or any other source? ☒ Yes ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
_Results were inconclusive_

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

BOX 1 ___ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

BOX 2 ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_[signature]_                                                  _9/13/12_
Signature                                                      Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 USC § 2000e-5(b), 29 USC § 211, 29 USC § 626, 42 USC §12117(a), 42 USC §2000ff-6.
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

## US EEOC Complaint Form – Supplement for Complaint of Moshe Friedman

Employer:            Columbia University Medical Center Radiation Safety Office

Terminated:          <u>Moshe Friedman – Office Administrator – 57 years old</u>

Also Terminated:     Salmen Loksen – Director & Radiation Safety Officer – 61 years old
                     Bruce Emmer – Physicist – 65 years old


My claim of employment discrimination is based on my religion, national origin, age and gender. I am an Orthodox Chassidic Jewish male, easily identified as such by my wearing of a Yarmulka and my beard, and my taking vacation time off on Jewish religious holidays, and at the time of my layoff-termination I was 57 years old.

*The following Supplements the Intake Questionnaire where there was not sufficient space to provide the answers.*


<u>Intake Questionnaire – Item 5</u>. **What happened that you think is discriminatory?**

On Thursday, January 7, 2010, Moshe Friedman, Office Administrator, was called to meet with Lisa Hogarty, COO of Columbia University Medical Center, who gave me notice of my impending termination on February 1, 2010.

Also laid off in this action was Salmen Loksen, CHP, DABR, who was informed that he was being laid off from his position as Director and Radiation Safety Officer of the Radiation Safety Office of Columbia University Medical Center (CUMC)/New York Presbyterian Hospital-Columbia Center (NYPH)/New York State Psychiatric Institute (NYSPI).

On Sunday, January 10, 2010, Bruce Emmer, DABR, DABMP, for many years employed as a Physicist for one day/ten hrs. per week in the Radiation Safety Office, arrived for work but was not allowed to enter the CUMC premises, and his ID badge was confiscated. In the next few weeks he was not allowed to return to work, and on February 18, 2010 he received by FedEx a notice of his termination.

The remaining fourteen (14) regular employees in the Radiation Safety Office of CUMC were not selected for layoff. Four (4) casual employees were also not affected by the layoff action. None of the about twenty-thirty (20-30) employees of the Environmental Health and Safety Office and the Radiation Safety Office of the Columbia University Morningside Campus, with which the CUMC Radiation Safety Office was merged, were laid off or negatively impacted by the layoff action. All three employees affected by the layoff, Salmen Loksen, Moshe Friedman, and Bruce Emmer, are <u>practicing Orthodox Jews, with *yarmulkas* and beards, ranging in age from 57 to 65</u>.

1

**Details of Initial Layoff Actions:**

On Wednesday, January 6, 2010 an email was received from an assistant of Lisa Hogarty, COO of Columbia University Medical Center, inviting Salmen Loksen and Moshe Friedman, who were CC'ed together, to a meeting next day at 11:30 a.m., to discuss "Update of Radiation Safety Office." No alternative dates or times would be available. Salmen Loksen and Moshe Friedman responded that they would attend the meeting.

The meeting was in dean's office, Physicians & Surgeons Building, room 2-401. Lisa Hogarty escorted Salmen Loksen to a conference room in the dean's suite. Present was Sony Jean-Michel from Human Resources. Lisa Hogarty sat down and looked at some papers and said that the University had decided to reorganize. Radiation Safety would now be under David Hirsch and Kathleen A. Crowley, and it was decided Salmen Loksen's position no longer necessary and is being eliminated.

A few minutes after Lisa Hogarty left the waiting area with Salmen Loksen, she returned to the waiting room for Moshe Friedman and escorted him to a small office where Maritza Gutierrez from HR was sitting at a table, Moshe Friedman was told his position was being eliminated.

Both Salmen Loksen and Moshe Friedman were escorted by the HR representatives, and accompanying security, Jim Verdiccio, Assist. Director of Dept. of Public Safety.

Both Salmen Loksen and Moshe Friedman were in Lisa Hogarty's Dean's suite about 20-30 minutes. Another about 10-15 minutes at HR. They were escorted back at the Radiation Safety Office suite at about 12:30 p.m. They discovered that all of the door locks in the suite had already been changed. All of the Radiation Safety Office staff had been told to gather for a previously unannounced meeting in the conference room (forcing another group, which had previously reserved the room, to wait out in the hallway).

Mr. Loksen and Mr. Friedman were allowed a few minutes to begin to gather just a few of their personal items that they had stored in their respective rooms, and to gave back items like keys, badges, etc. After that they were rushed out of the premises, all the time escorted by security.

Mr. Friedman and Mr. Loksen were told to be available until the termination date to come to the office to assist with the transition, and to start retrieving their personal items from the office. Mr. Friedman was told by the Human Resources representatives that he would be assisted to retrieve his personal computer data files from his assigned office computer.

Over the next few days Mr. Friedman and Mr. Loksen discovered that they had been locked out of their email accounts. The promises of the HR representatives that he would be allowed to return to the office to assist with the transition, to retrieve his personal possessions and his computer data files, and to say goodbye to his coworkers – were all reneged on.

All of these actions by the employer that extended over the entire period of January 7 through February 1, 2010 were discriminatory in nature, and in violation of numerous Regulatory

2

Requirements and Columbia's own policies and procedures. There are clear facts to show that the proper channels were not followed in any of the aspects of this layoff action.

**Intake Questionnaire – Item 6**. Why do you believe these actions were discriminatory?

**Religious Discrimination Claims:**

- After the "reorganization" a high level source stated that a reason for the shakeout was that management perceived that "there are too many yarmulkas in the Radiation Safety Office."

- There are three individuals affected by the "reorganization" – Moshe Friedman, Salmen Loksen, and Bruce Emmer (whose CU ID Badge was immediately confiscated, and who was subsequently terminated). These three individuals are clearly identifiable as orthodox Jews with yarmulkas.

- In addition to wearing yarmulkas, are Chassidic, who have gray beards and wear Tzitzis.

**Age and Gender Discrimination Claims:**

- Moshe Friedman, at 57, was the oldest administrative/secretarial employee with a gray beard. The next oldest administrative/ secretarial employee is 32 years old.

- Moshe Friedman was also the only male among all the administrative/secretarial staff. The person who replaced him was a female, age 32.

- The two other individuals who were affected, Salmen Loksen, 61, and Bruce Emmer, 65, were the two oldest employees in Radiation Safety.

**Intake Questionnaire – Item 7**. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?

The reason for the layoff action was for "restructure and consolidation of business operations and functions to create greater efficiency, budgetary constraints and changes in the scope of the department." (It turns out however, as will be explained, that budgetary constraints played no part in this, and in fact it is virtually certain that the reorganization will lead to much greater expenses, not less.) In other words, it was stated that the Radiation Safety Office was being incorporated into the Office of Environmental Health & Safety (EH&S), which would assume all administrative functions, and consequently there was no longer a need for a Director and Office Administrator for the Radiation Safety Office.

3

The stated reason for Bruce Emmer's termination, in a FedEx letter to him that he received on Feb. 18, 2010, was that as part of the restructuring it was determined that his position was no longer necessary.

The stated reason for the layoff of Salmen Loksen and Moshe Friedman was due to "budgetary constraints." This explanation is not plausible, especially with the ever increasing number of clinical and research projects involving radiation at the Medical Center. To this extent, at the Institutional Health and Safety Committee Meeting in December, 2009, Dr. Hirsch stated that safety concerns and adherence to regulatory requirements outweighed any money or budgetary concerns in relation to the RSO. Dr. Hirsh elaborated that a reduction in funding could result in regulatory infractions and that the cost of fines for any violations could obliterate any potential budgetary savings. Dr. Hirsh and Columbia University as a whole certainly remember the nearly one million dollar fine, negative publicity, legal costs, etc., suffered by Columbia as a consequence of trying to cut costs at the Morningside Campus Environmental Health and Safety Office in the early 2000's. In recent front page news in the NY Times of January 16, 2010, CUMC found to be in violation of FDA regulations. The resulting elimination of research opportunities and negative publicity is substantially more costly that budgeting for quality control and regulatory assurance personnel.

**Intake Questionnaire – Item 8. Describe who was in the same or similar situation as you and how they were treated.**

**Of the persons in the same or similar situation as you, who was treated *better* than you?**

1. Everyone else (except for Salmen Loksen and Bruce Emmer) in the CUMC Radiation Safety Office.

2. For example, Jillian Sachelli, an Administrative Assistant who I supervised, female, 32 years old, was raised to an Officer position, basically she was given my previous job.

3. In the "decisional unit" for the "reorganization" only employees employed by Radiation Safety in the Medical Center Campus at Columbia University were considered for job elimination. No one from the Radiation Safety Office at Morningside was considered.

4. No one from the Environmental Health and Safety Office at either CUMC or at the Morningside Campus was considered for job elimination. The purported "reorganization" was to combine the EH&S with Radiation Safety at CUMC, but the decisional unit was limited to the staff of the Radiation Safety Office at CUMC.

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

Regarding Salmen Loksen and Bruce Emmer please see above.

4

**Intake Questionnaire – Item 13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say.**

**Full Name; Job Title; Address & Phone No.; What do you believe this person will tell us?**

Dr. Lee Goldman – Dean of the Columbia University Medical Center
Dr. Robert Kass – Member of the Joint Radiation Safety Committee
Dr. Chang Shi Wuu – Member of the Joint Radiation Safety Committee
Dr. Peter Esser – Member of the Joint Radiation Safety Committee
Dr. Edward Nickaloff – Member of the Joint Radiation Safety Committee
Dr. Edward Christman – Member of the Joint Radiation Safety Committee
Dr. Eric Hall – Member of the Joint Radiation Safety Committee
Dr. Steve Balter – Member of the Joint Radiation Safety Committee
Dr. Robert Kelly – NY Presbyterian Hospital – Member of the Joint Radiation Safety Committee
Dr. John Mann – NYS Psychiatric Institute – Member of the Joint Radiation Safety Committee
Thomas Juchnewicz – was Acting Assist. Director, CUMC Radiation Safety Office
Salmen Loksen – was Director, CUMC Radiation Safety Office
Bruce Emmer – was Physicist, CUMC Radiation Safety Office

All of these people will confirm:

1. Outstanding performance of the CUMC Radiation Safety Office under Salmen Loksen's direction with Moshe Friedman as Office Administrator.

2. The process utilized during the "reorganization" and associated layoff action was highly irregular and in violation of regulatory requirements and Columbia University policy.

3. That Moshe Friedman, Salmen Loksen and Bruce Emmer are openly religious Chassidic Jews with beards and yarmulkas.

**Supplemental Information and Relevant Background**

All personnel in the Radiation Safety Office are Columbia University employees. The Radiation Safety Office facilities are located at the Columbia University Medical Center, at the Washington Heights campus (168th Street). The Radiation Safety Office administers a number of Licenses, Registrations and Permits, providing radiation safety services for the human use and non-human use of radiation at Columbia University Medical Center, New York Presbyterian Hospital, and New York State Psychiatric Institute, which share interconnected facilities and personnel, and which by agreement share in the oversight of the Radiation Safety Office, through the Joint Radiation Safety Committee of CUMC/NYPH/NYSPI, as well expenses for its personnel salaries and operational costs. The Radiation Safety Office also provides radiation safety services to a number of off campus locations.

Columbia University has another Radiation Safety Office on the Columbia University Morningside campus (116th Street), much smaller in size and scope, with just two employees,

5

and restricted to non-human research use of radiation, with no oversight of medical use of radiation on human patients and research subjects.

For many years the Regulatory Agencies, NYC DOH and NYS Department of Environmental Conservation have been regularly sending written recommendations (even warnings) to CUMC about the need to retain adequate staffing levels in the Radiation Safety Office.

In the "restructuring," contrary to regulatory requirements, all of these substantial changes were implemented without the review and vote of approval by the CUMC/NYPH/NYSPI Joint Radiation Safety Committee. Additionally, all of these substantial changes were implemented without submission to NYC DOHMH and receipt of proper License Amendments.

If it was a genuine reorganization and not a sham targeting specific employees for elimination due to their age, religion, etc., then the employees from Environmental Health and Safety should have been considered for position elimination. It is apparent that this sham "reorganization" was used to target specific employees because of their age, religion and national origin.

**Details of 2010 "Reorganization":**

In the reorganization the administrative oversight for the Radiation Safety Office was transferred from Dr. Robert Kass, Columbia University's Management Representative to the Radiation Safety Committee and the administrator designated by the Dean for oversight of the Radiation Safety Office, to Dr. David Hirsh, Exec. VP for Research, via Kathleen Crowley, Assoc. VP of Environmental Health & Safety. George Hamawy, the Radiation Safety Officer for the Morningside, Nevis and Lamont campuses, and Barnard College, is meanwhile also serving as interim Radiation Safety Officer for CUMC, NYPH and NYSPI.

**Moshe Friedman – Office Administrator**

The Radiation Safety Office's part-time officer level Administrative Assistant position was expanded into a full-time Office Administrator position, filled by Moshe Friedman, in 2006, who transferred from another position in the Columbia University Medical Center.

The Office Administrator position includes numerous duties and responsibilities. His experience working in Radiation Safety and in the Center for Radiological Research make his contributions in many areas, including generating technical documents, invaluable. There is no apparent reason for his layoff except for his religious identification and age. It is virtually certain that if he were of any other religious/ethnic identity and younger he would not have been laid off.

**Salmen Loksen – Director & Radiation Safety Officer**

Notably, during the tenure of Salmen Loksen as Director and Radiation Safety Officer, CUMC, NYPH and NYSPI have had a very enviable record of compliance with regulatory requirements, consistently earning comments from Inspectors such as "Grade of A," "a model for the whole city," and in the last inspection in December 2009, "perfect." This is an especially significant achievement considering the large size and scope of the activities at CUMC/NYPH/NYSPI. In

these past years, under the directorship of Salmen Loksen, the Radiation Safety Office has effectively renegotiated a number of vender services, minimizing costs to the institutions, and holding down budgetary increases. There is a saying, "if it isn't broke, don't fix it," and in this case, it wasn't broke, it was working "perfectly," so why would CU administration intentionally take an axe and break it?

Further, in selecting which employee should stay on as the Radiation Safety Officer of the combined CUMC and Morningside Campus Radiation Safety Office, Mr. Loksen unquestionably has superior credentials to George Hamawy, who was given expanded responsibilities on an interim basis while a national search was conducted for someone with credentials similar to Salmen Loksen. As of this date, November 2010, Mr. Hamawy is still the interim Radiation Safety Officer.

Mr. Loksen is certified by American Board of Radiology in Therapeutic Radiologic Physics and is a certified Health Physicist (CHP). In addition, Mr. Loksen is Licensed by New York State in Medical Health Physics, Medical Nuclear Physics, Diagnostic Radiological Physics, and Therapeutic Radiological Physics. Mr. Loksen, in addition to his being listed as the RSO for all CUMC/NYPH/NYSPI licenses and permits, is also listed as the Therapy Physicist on the Broad Scope Human Use License, Gamma Knife License, and the Linac Certified Registrations. In addition Mr. Loksen is listed as the RSO and Therapy Physicist at the Radiation Oncology facility at East 60th Street.

When comparing the two general campuses, Morningside and the Medical Center, the Medical Center's use of radiation and radioactive materials is much more complex in size and scope of operations, due primarily to the medical and research human use of radiation, none of which is performed at the academic campus. This distinction is so clear, that for development and advice regarding the new Manhattanville project, which will involve human use of radiation in the Morningside Campus area, the developers turned to Mr. Loksen at the CUMC campus, and not to Mr. Hamawy on the Morningside Campus.

In addition, as stated above, Mr. Loksen has in his 13 plus years as Director of the CUMC/NYPH/NYSPI Radiation Safety Office an enviable record of ensuring regulatory compliance and receiving continuous allocates from regulatory agencies, including NYS DEC and NYC DOHMH. Mr. Loksen has excellent rapport with all the departments, including with the Medical Physicists at CUMC/NYPH/NYSPI. Mr. Loksen also has a fine continuing relationship with CU's academic Medical Physics program, including providing lectures and practicums to Medical Physics graduate students – for which he never received any additional compensation. It may reasonably be expected that there will be a number of negative side effects to this the hasty reorganization that will negatively impact research, patients, and the surrounding community.

**Bruce Emmer – Physicist**

With regard to Bruce Emmer, there appears to be no reason for his termination other than it being due to religious and age discrimination. Some relevant details about his situation:

7

Bruce Emmer was terminated despite the fact that he was a permanent employee for many years. Other part time employees, who do not have yarmulkas and beards, were not selected for termination. Bruce Emmer is a highly qualified medical physicist, Board Certified by the American Board of Radiology and the American Board of Medical Physics in Diagnostic Medical Physics. In addition Mr. Emmer is licensed by New York State in Medical Health Physics, Medical Nuclear Physics, Diagnostic Radiological Physics, and Therapeutic Radiological Physics. His Board Certification in Diagnostic Medical Physics was required for his responsibilities overseeing the medical center's X-ray Quality Assurance program.

**Reorganization attempt in 2004**

There was a previous attempt to do this same type of "Reorganization" in 2004. This was done by Columbia without consideration and vote of the Joint Radiation Safety Committee and a request to do so being submitted to NYC Department of Health as required by regulatory requirements. At that time the NYC Department of Health issued a Violation against Columbia for its unauthorized action, and Dr. Fischbach, head of CUMC (since replaced by Dr. Goldman) send a letter of retraction to the City. A copy of Dr. Fischbach's letter is attached. In the present January 2010 reorganization there again was no consideration and vote of the Joint Radiation Safety Committee and License Amendment request to do this submitted to NYC Department of Health, and the no License Amendment has been issued.

In addition, for many years the Regulatory Agencies, NYC DOH and NYS Department of Environmental Conservation have been regularly sending written recommendations (even warnings) to CUMC about the need to retain adequate staffing levels in the Radiation Safety Office. In this action, with professional medical physics and radiation safety experts Salmen Loksen and Bruce Emmer being laid off, it is almost certain that there will be a gap in the RSO's ability to maintain its responsibilities. In 2005, the expansion of the then part-time officer level Administrative Assistant position into a full-time Office Administrator position, later filled by Moshe Friedman, was also discussed with the regulatory agencies.

In the January 2010 reorganization, it is unclear why anyone should have been laid off. Back in 2004, when CUMC first tried to accomplish a reorganization to unite EH&S and the RSO, it was done without terminating any positions. It seems almost certain that the immediate layoff of three critical employees will have a negative impact on the ability of the RSO to fulfill all its responsibilities and provide the best possible radiation safety services, and almost inevitably will result in problems, especially as there are many expanding responsibilities in recent years and that are foreseen for the future addition of various new projects. Indeed, at the present time there is a pressing need for additional staff, certainly not for less staff, and this has been continuously been recommended by State and City regulatory agencies, and committed to by CUMC management.

In the present restructuring, contrary to regulatory requirements, all of these substantial changes were implemented without the review and vote of approval by the CUMC/NYPH/NYSPI Joint Radiation Safety Committee. Additionally, all of these substantial changes were implemented without submission to NYC DOHMH and receipt of proper License Amendments.

8

**Racial and religious discrimination investigation of Mr. Loksen and Mr. Friedman, 2009**

In 2009 there had been another examination of Radiation Safety Office staffing and hiring practices, conducted by the CU Office of Equal Opportunity and Affirmative Action. This had been prompted by a complaint by a casual employee of Asian extraction that she was not hired for a permanent position in the RSO because of discrimination at the hands of Salmen Loksen, the RSO Director, due to his Orthodox Jewish affiliation, an affiliation shared by Moshe Friedman, Office Administrator, and other RSO staff.

In a report issued at the end of December 2009, it was noted that there was no basis for the complaint. There had no bias in the RSO hiring decisions, and the best candidate was selected regardless of race or religion.

Both Mr. Loksen and Mr. Friedman feel that they are themselves easy targets for discrimination complaints and they are at times discriminated against due to their obvious minority group status. Both wear yarmulkas and have beards. In the present termination of Mr. Loksen and Mr. Friedman, and the suspension and subsequent termination of Bruce Emmer, notably all three are members of one minority ethnic group, easily identified by their yarmulkas and beards.